JUDGE HAZELRIGG
deuvebed the opinion op the coubt.
The law provides (section 965, Ky.- Slat.) that the terms of the Circuit Court of Harrison county shall be commenced and held on the fourth Mondays in February and May, first Monday in September, and second Monday in' November, and may be held for eighteen juridical days. It is further provided (section 964) that “grand juries shall be summoned and criminal and penal causes shall be heard at but three terms, in each year, in any county, to be fixed by order of court, unless in an emergency the court may otherwise direct; and grand and petit juries may be summoned for any special term by direction of the judge.” The indictment under which appellant was tried and convicted was found at the September term, 1S97 — the third term of the Harrison Circuit Court held during the year 1897; and because three grand juries other than the one which found the indictment against him had been impaneled in the county within a year prior to the convening of the grand jury finding the indictment, and because there appears to have been made no order of court designating at what three terms of the court grand juries should be summoned and impaneled, the appellant contends that his motion to quash the indictment under which he was tried should have been sustained; and this is the first error of which he complains. It is evident that the statute refers to calendar years when providing that grand juries shall be summoned at but “three terms in each year,” and there *304 fore the term at which appellant was indicted was the third in that year, and there is no reason why it might not have been impaneled in strict accordance with the very letter of that statute. Concerning the alleged lack of an order of court fixing the three terms at which such juries were to be summoned, it only appears from the affidavit of the appellant1 himself that no stated three several terms have been fixed by order of the court at which three several grand juries should be impaneled in the county within one year, nor at which criminal and penal cases should be heard; nor had the judge of the court given any directions to summons grand juries for any special term or for this term, and such cases had already been heard at three terms within twelve months prior to the September term, 1897. Presumably, however, jury commissioners had been appointed by order of court for the selection of such juries for the three terms held within the year 1897, and their names had been drawn by the judge, and the jurors had been, in fact summoned and impaneled. A compliance with these requirements is equivalent to an express order to summon such juries for these terms. In fact, the law requires (section 2249, Ky. Stat.) that grand juries shall be summoned at each regular term of the Circuit Court, unless otherwise ordered by the judge by order entered of record.
Complaint is made that the statements of the accused, made the night of the killing, and shortly after the shooting, were, incompetent; or, if competent, that they were only admissible as showing malice; and the purpose of their admission should have been explained to the jury. We regard this testimony as competent. Nor was it material that the'jury was not informed of the pariicular purpose of the evidence. When testimony on merely *305 collateral and incidental matters is admitted, it is often proper that its purpose be made plain, to prevent misleading the jury. Thére is clearly no room for the application of the principle here. The evidence bore solely; on the appellant’s state of feeling towards the deceased, and conduced to illustrate his animosity towards him. If, as argued, his animosity was justified by the conduct of the deceased towards him, the jury would give that fact its due weight. Other complaints are made as to testimony, but which, after careful examination, we find to be without merit.
When the jury first returned their verdict, it read as follows: “We, the jury, find Dan Taggart guilty of voluntary manslaughter, and fix his punishment by confinement for seven years in the punishment. T. W. Hardy, foreman.” The clerk read the word “punishment” at the end of the verdict, as if written “penitentiary,” and the jury was discharged, taking their seats in the court room, except one, who stepped into a water-closet attached to the court room. The clerk then called the court’s attention to the mistake, and the members of the jury were called up, and the word “punishment” was changed to what the foreman said he intended it to be, namely, the word “penitentiary.” The verdict was then re-read, and the jury polled. We perceive no error in this. The context clearly showed that by the word “punishment” was meant the word “penitentiary,” and the immediate correction could not in any conceivable way have prejudiced the rights of the appellant. The instruction clearly embraced the law of the case. The judgment is affirmed.